# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANTHONY LAMA,** | **CIVIL ACTION** |
| **Plaintiff** | |
| | |
| **VERSUS** | **NO. 17-9777** |
| | |
| **FLORIDA MARINE TRANSPORTERS, LLC,** | **SECTION: "E" (3)** |
| **Defendant** | |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by Defendant Florida Marine Transporters, LLC ("FMT"), seeking judgment as a matter of law on Plaintiff's claims for Jones Act negligence and unseaworthiness.[1] The motion is opposed.[2] FMT filed a reply.[3] For the reasons that follow, the Motion for Summary Judgment is **DENIED.**

## BACKGROUND

The following facts are not in dispute. Plaintiff Anthony Lama was employed by FMT to perform barge maintenance and repair, starting in 2010.[4] Plaintiff's daily job duties included preparations for vetting and Coast Guard inspections, performing damage assessments, and conducting general barge maintenance. Plaintiff was also responsible for maintenance on a certain set of barges within his geographical area.[5] As part of that responsibility, Plaintiff would conduct a bi-annual inspection of the barges under his assignment.[6] When on a job-site, Plaintiff had no direct supervision.[7]

---

[1] R. Doc. 26.
[2] R. Doc. 40.
[3] R. Doc. 45.
[4] R. Doc. 26-3 at ¶ 1; R. Doc. 40-3 at ¶ 1.
[5] R. Doc. 26-3 at ¶¶ 2-3; R. Doc. 40-3 at ¶¶ 2-3.
[6] R. Doc. 26-3 at ¶ 4; R. Doc. 40-3 at ¶ 4.
[7] R. Doc. 26-3 at ¶ 6; R. Doc. 40-3 at ¶ 6.

Plaintiff alleges that, on or about June 9, 2017, he was injured while replacing a cable on an emergency shutdown system on an FMT barge.[8] Plaintiff purports that to complete the job, he had to stand on a step on the front side of the pump engine, bend at the waist, and work on the cable located down inside the foundation of the engine below the level of his feet.[9] On September 28, 2017, Plaintiff filed the instant lawsuit, asserting claims for unseaworthiness, Jones Act negligence, and maintenance and cure.[10] On August 21, 2018, FMT filed the instant Motion for Summary Judgment, arguing there is no evidence that any unsafe or defective condition existed aboard the barge to support Plaintiff's claims for negligence and unseaworthiness.

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11] "An issue is material if its resolution could affect the outcome of the action."[12] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[13] All reasonable inferences are drawn in favor of the non-moving party.[14] There is no genuine issue of material fact if, even viewing the evidence in the light most

---

[8] R. Doc. 1 at ¶ V. Plaintiff's Complaint alleges he was injured on June 20, 2017. Through discovery and at his deposition, Plaintiff claimed he was injured on June 9, 2017.
[9] R. Doc. 4-1 at 8.
[10] R. Doc. 1.
[11] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[12] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[13] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[14] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[15]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[16] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[17]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[18] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[19] If the moving party successfully carries this burden, the

---

[15] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).
[16] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[17] *Celotex*, 477 U.S. at 322–24.
[18] *Id.* at 331–32 (Brennan, J., dissenting).
[19] *See id.* at 332.

burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[20] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[21] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[22]

## LAW AND ANALYSIS

At trial, Plaintiff will bear the burden of proving FMT's negligence and the unseaworthiness of the barge on which he was injured. FMT has chosen the second method of meeting its burden as the movant on summary judgment, affirmatively demonstrating there is no evidence in the record to establish an essential element of Plaintiff's Jones Act negligence and unseaworthiness claims. FMT argues, "the record evidence lacks proof that any unsafe condition existed aboard the barge that [it] knew of and failed to alleviate. There is also an absence of proof that any defective condition of the barge (as none existed) caused Mr. Lama's alleged injuries."[23]

---

[20] *Id.* at 322–24.
[21] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.
[22] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[23] R. Doc. 26-2 at 11.

To establish the lack of record evidence regarding an unsafe condition, FMT relies on the following undisputed facts. As part of his job duties, Plaintiff was responsible for working in a "safe and efficient manner," familiarizing himself with all barge equipment and operations, maintaining all pumps and pump engines when necessary, and replacing gauges on pump engines when necessary.[24] Plaintiff testified that, at the time he commenced the activity, he did not consider the task of changing the shutdown cable to be unsafe.[25] Further, Plaintiff did not raise a safety issue concerning the shutdown cable, either before or after the incident.[26] Plaintiff never filed an accident report or other document with FMT addressing the cause of the alleged incident, or any unsafe condition aboard the barge.[27] Plaintiff did not inform any of his supervisors that the task was unsafe, either before or after the incident.[28] Plaintiff was not injured because of a lack of help or the malfunction of any of his tools.[29]

Plaintiff, as the party opposing summary judgment, may defeat Defendant's motion by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[30] In this case, Plaintiff must identify specific evidence in the record and articulate the precise manner in which that evidence makes a sufficient showing of an disputed fact regarding the existence of an unsafe condition, FMT's knowledge of such a condition, and the unseaworthiness of the vessel for him to survive summary judgment on his Jones Act negligence and unseaworthiness claims.

---

[24] R. Doc. 26-3 at ¶ 5; R. Doc. 40-3 at ¶ 5; *see also* R. Doc. 26-4 at 9.
[25] R. Doc. 26-3 at ¶ 8; R. Doc. 40-3 at ¶ 8; *see also* R. Doc. 26-4 at 20.
[26] R. Doc. 26-3 at ¶ 10; R. Doc. 40-3 at ¶ 10; *see also* R. Doc. 26-4 at 17-19.
[27] R. Doc. 26-3 at ¶ 12; R. Doc. 40-3 at ¶ 12; *see also* R. Doc. 26-4 at 19.
[28] R. Doc. 26-3 at ¶ 14; R. Doc. 40-3 at ¶ 14; *see also* R. Doc. 26-4 at 18-19.
[29] R. Doc. 26-3 at ¶ 16; R. Doc. 40-3 at ¶ 16; *see also* R. Doc. 26-4 at 21.
[30] *Celotex*, 477 U.S. at 332–33.

## I.     Jones Act Negligence

The Jones Act provides a seaman with a cause of action against his employer for injuries sustained as a result of his employer's negligence.[31] A Jones Act employer is required to exercise "ordinary prudence under the circumstances,"[32] to maintain a "reasonably safe work environment."[33] In order to prevail in a claim for negligence, the plaintiff must present some evidence from which the fact finder can infer that an unsafe condition existed and that the vessel owner either knew, or in the exercise of due care should have known, of the condition.[34] A Jones Act employer is not liable for a breach of its duty to provide a safe place to work unless the employer has notice and the opportunity to correct an unsafe condition.[35] "Requiring a Jones Act seaman to work in 'awkward and confined quarters without adequate help and without suitable tools and equipment' can be negligence under the Jones Act."[36]

The parties dispute whether Plaintiff was required to work in an awkward position to repair the emergency shut off cable and the length of time Plaintiff was required to maintain an awkward position. Plaintiff testified that to complete the job, he was required to stand on a step on the front side of the engine and work on the cable, located down inside the foundation of the engine below the level of his feet.[37] Plaintiff testified the work took about two hours on the date of his injury.[38] Plaintiff's ergonomic expert opined that

---

[31] *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997) (*en banc*).
[32] *Gautreaux*, 107 F.3d at 338.
[33] *Ober v. Penrod Drilling Co.*, 726 F.2d 1035, 1037 (5th Cir. 1984) (*per curiam*).
[34] *Perry v. Morgan Guar. Trust Co. of N.Y.*, 528 F.2d 1378, 1379 (5th Cir. 1976).
[35] *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989) (citing *Perry*, 528 F.2d 1380); *Daigle*, 322 F.Supp.2d at 725
[36] *Martinez v. Offshore Specialty Fabricators, Inc.*, No. 08-4224, 2011 WL 1527096, at *6 (E.D. La. Apr. 20, 2011), *aff'd*, 481 F. App'x 942 (5th Cir. 2012) (quoting *Crador v. La. Dep't of Highways*, 625 F.2d 1227, 1230 (5th Cir. 1980)).
[37] R. Doc. 40-1 at 13.
[38] *Id.* at 19.

"having to bend at the waist to work at a location near or below the level of his feet for a period of 45 minutes is awkward in the extreme and . . . well outside the window of scientifically established work positions in which maintenance activities should be performed."[39] Defendant's ergonomic expert opined that the job could be completed in several positions, including kneeling, squatting, twisted, trunk flexed, and/or arm raised.[40] Defendant's ergonomic expert conducted a work task simulation on a similar barge and found the process of replacing the cable involved eight to ten minutes of kneeling or squatting, five to ten minutes of flexing the trunk while supporting the upper body by resting an arm on the pump housing, and twenty minutes of standing with some work performed above shoulder level.[41] FMT's expert concluded the employee would change positions as he completed various steps involved in replacing the cable and "was not in an awkward posture for 45 minutes as [Plaintiff's expert] suggests in his report."[42] As a result, FMT's expert concluded Plaintiff "did not perform prolonged tasks in awkward work postures."[43] However, FMT's expert admitted "Mr. Lama did assume awkward work postures," clarifying he "did not maintain them for any significant length of time."[44]

The parties also dispute whether FMT knew or should have known of the unsafe condition. Defendant highlights the undisputed facts that Plaintiff did not raise a safety issue concerning the shutdown cable,[45] did not file an accident report or other document

---

[39] R. Doc. 40-2 at 4.
[40] R. Doc. 26-6 at 4.
[41] *Id.* at 3.
[42] *Id.* at 4.
[43] *Id.* at 5.
[44] *Id.* at 4.
[45] R. Doc. 26-3 at ¶ 10; R. Doc. 40-3 at ¶ 10; *see also* R. Doc. 26-4 at 17-19.

with FMT addressing any unsafe condition aboard the barge,[46] and did not inform any of

his supervisors that the task was unsafe.[47] Plaintiff testified the configuration of the shut

off cable differed from most because the cable he repaired ran up the front side of the

engine; most cables are located on the back side of the engine, where there is no step.[48]

Plaintiff testified he brought up the mechanical issue of the configuration of the cable to

Captain Norm, Louie Develle, and Mr. Barnes.[49] Accordingly, Plaintiff has demonstrated

a disputed issue of material fact exists regarding the position in which he worked, the time

required to complete the job, and FMT's knowledge of an unsafe condition.

Further, "The use of summary judgment is rarely appropriate in negligence . . .

cases, even where the material facts are not disputed."[50] As the Fifth Circuit has

explained:

> Because of the peculiarly elusive nature of the term "negligence" and the
> necessity that the trier of facts pass upon the reasonableness of the conduct
> in all the circumstances in determining whether it constitutes negligence, it
> is the rare personal injury case which can be disposed of by summary
> judgment, even where the historical facts are concededly undisputed.[51]

Thus, a court will grant summary judgment in a negligence case only in "rare

circumstances."[52]

This reasoning is particularly applicable to Jones Act cases. "Because of the policy

of providing an expansive remedy for seamen, submission of Jones Act claims to a jury

---

[46] R. Doc. 26-3 at ¶ 12; R. Doc. 40-3 at ¶ 12; *see also* R. Doc. 26-4 at 19.
[47] R. Doc. 26-3 at ¶ 14; R. Doc. 40-3 at ¶ 14; *see also* R. Doc. 26-4 at 18-19.
[48] R. Doc. 40-1 at 12.
[49] *Id*. at 14.
[50] *Davidson v. Stanadyne, Inc.*, 718 F.2d 1334, 1338–39 (5th Cir. 1983) (citing *Marsden v. Patane*, 380 F.2d 489, 491 (5th Cir. 1967); *Gross v. Southern Railway Co.*, 414 F.2d 292, 296 (5th Cir. 1969); *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir. 1970); *King v. Avtech Aviation, Inc.*, 655 F.2d 77, 78 (5th Cir. 1981); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2729 at 195 (1983)).
[51] *Gauk v. Meleski*, 346 F.2d 433, 437 (5th Cir. 1965).
[52] *Davidson*, 718 F.2d at 1339 n.8 ("In tort actions in which determinations of a less "elusive nature," such as the existence of an agency relationship, waiver, or whether a plaintiff is in a class protected by a statute, are dispositive, summary judgment may more often be appropriate." (citing 10A Wright, § 2729 at 197–

requires a very low evidentiary threshold; even marginal claims are properly left for jury determination."[53] "Summary judgment is rarely granted in maritime negligence cases because the issue of whether a defendant acted reasonably is ordinarily a question for the trier of fact."[54] As a result, FMT's motion for summary judgment on Plaintiff's Jones Act negligence claim is denied.

## II.    Unseaworthiness

Independent from a Jones Act claim, a seaman may claim his injuries were caused by the unseaworthiness of a vessel under general maritime law. A vessel is deemed unseaworthy if a condition of the vessel presents an unreasonable risk of harm to the seaman.[55] The two elements of an unseaworthiness claim are: (1) the vessel or the vessel's equipment was not reasonably fit for its intended purpose, and (2) the "unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness."[56] A vessel owner's duty to prevent unseaworthy conditions is absolute, continuing and nondelegable, and lack of knowledge or of opportunity to correct such conditions does not mitigate the owner's duty.[57] A vessel may be unseaworthy because of an unsafe method of work being used aboard the vessel.[58]

---

[201]); *see also Keating v. Jones Development of Mo., Inc.*, 398 F.2d 1011, 1015 (5th Cir. 1968) ("Negligence is a seldom enclave for trial judge finality. Negligence is a composite of the experiences of the average man and is thus usually confined to jury evaluation.").

[53] *Leonard v. Exxon Corp.*, 581 F.2d 522, 524 (5th Cir. 1978) (citing *Barrios v. La. Construction Materials Co.*, 465 F.2d 1157, 1162 (5th Cir. 1972)).

[54] *Schoenfeldt v. Schoenfeldt*, No. 13-5468, 2014 WL 1910808, at *3 (W.D. Wash. May 13, 2014) (citing *Christensen v. Georgia–Pacific Corp.*, 279 F.3d 807, 813 (9th Cir. 2002)); *see also id* ("Questions of forseeability and causation" in Jones Act negligence cases "particularly lend themselves to resolution by a jury" (citing *Wyler v. Holland America Line–USA, Inc.*, 348 F. Supp. 2d 1206, 1210 (W.D. Wash. 2003))).

[55] *Park v. Stockhill Boat Rentals, Inc.*, 492 F.3d 600, 604 (5th Cir. 2007).

[56] *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960). This is a "proximate cause" standard. *Alverez v. J. Ray McDermott & Co.*, 674 F.2d 1037, 1042−44 (5th Cir. 1982).

[57] *Allen v. Seacoast Products, Inc.*, 623 F.2d 355 (5th Cir. 1980).

[58] *Martinez*, 2011 WL 1527096, at *6; *see also Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354−55 (5th Cir. 1988); *Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 928 (5th Cir. 1992).

The parties dispute whether the emergency shut off cable was reasonably fit for its intended purpose and whether Plaintiff engaged in an unsafe method of work. As discussed above, the parties dispute whether Plaintiff engaged in an unsafe method of work, based on the disputes regarding the positioning, length of time required to complete the project. Defendant highlights the undisputed fact that at the time he commenced the job, Plaintiff did not consider the task of changing the shutdown cable to be unsafe.[59] Plaintiff testified that after he injured himself, he believed the task was unsafe.[60] Plaintiff also testified that "being left in the fleet by myself with no help" was unsafe.[61] FMT's expert opined that changing out the emergency shut off cable is a single man job that does not require two people.[62] Further, Plaintiff testified the mechanical issue involving the cable required it to be changed before every Coast Guard inspection, which he contends demonstrates it was not reasonably fit for its intended purpose.[63] Plaintiff has demonstrated a disputed issue of material fact regarding the existence of an unsafe method of work and the unseaworthiness of the barge on which he was injured. Further, the question of unseaworthiness is ordinarily one for the jury,[64] and only in a rare case can a vessel be unseaworthy as a matter of law.[65] Accordingly, FMT's motion for summary judgment on Plaintiff's claim for unseaworthiness is denied.

---

[59] R. Doc. 26-3 at ¶ 8; R. Doc. 40-3 at ¶ 8; *see also* R. Doc. 26-4 at 20.
[60] R. Doc. 26-4 at 20.
[61] *Id.*
[62] R. Doc. 26-6 at 4.
[63] R. Doc. 40-1 at 14.
[64] *Morales v. City of Galveston*, 291 F.2d 97, 98 (5th Cir. 1961), *aff'd sub nom. Morales v. City of Galveston, Tex.*, 370 U.S. 165 (1962)("It is settled law that whether a vessel is, or is not, seaworthy, is ordinarily a question of fact for the trier of the facts to determine.").
[65] *Jefferson v. Taiyo Katun, K.K.*, 310 F.2d 582 (5th Cir. 1962).

## CONCLUSION

**IT IS ORDERED** that the Motion for Summary Judgment[66] filed by Defendant

Florida Marine Transporters, LLC is **DENIED**.

**New Orleans, Louisiana, this 26th day of March, 2019.**

_____

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[66] R. Doc. 26.